# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| KENNETH L. HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-CV-176 JVB |
| | ) | |
| INDIANA MICHIGAN POWER COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Kenneth Harper, an African-American born in 1950, filed charges of race, age, and perceived disability discrimination with the EEOC after being disciplined, placed on light duty, and required to undergo examinations before returning form sick leave. He eventually filed a complaint in this court on April 20, 2009. Defendant Indiana Michigan Power Company moved for summary judgment on October 8, 2010. Plaintiff has not responded to Defendant's Motion.[1]

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to

---

[1] While the Plaintiff has not responded to the motion for summary judgment, the Court has reviewed the record in its entirety in determining this case.

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628.. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Background Facts**

Because Plaintiff did not controvert any material facts by failing to respond to the motion for summary judgment, the Court accepts the fact set forth in Defendant's brief.

Plaintiff Harper was hired by Defendant Indiana Michigan Power Company in October 1972. At the times relevant to this lawsuit, Harper was a Line Mechanic A. The job responsibilities of a Line Mechanic A include constructing and maintaining high energy electric utility power lines and equipment. The Line Mechanic position requires a certain amount of upper body strength and involves a high degree of risk because individuals employed in that position find themselves routinely called upon to work with high energy electric utility power lines and equipment both on the ground and several feet in the air.

On August 1, 2003, Harper was fired by Indiana Michigan Power Company because he had been working at his food truck business while he was on sick leave. Harper challenged this action and Indiana Michigan Power Company and Harper went through an arbitration hearing. It was determined that Indiana Michigan Power Company did not have just cause for terminating Harper, and he was reinstated with full seniority and back pay.

Harper filed a discrimination charge with the EEOC in April 2005, but the record does not indicate what this complaint was about. In March 2006, Harper wrote a letter to Indiana Michigan Power Company's President and Chief Operation Officer, Marsha Ryan. In the letter, Harper complained about his belief that Indiana Michigan Power Company discriminated against minorities in its hiring and recruiting practices. Ryan and Cheryl Edwards, a member of Indiana Michigan Power's diversity council, met with Harper to discuss the letter. They listened to Harper's concerns and informed him that Indiana Michigan Power Company's work force in South Bend actually had a higher percentage of minorities than in the community as a whole.

In December 2007, Harper applied for a Line Servicer promotion in Buchanan, Michigan. At this time, Harper was working in South Bend. Harper did not get the promotion. Instead, it

went to Jerry Claxton, a white man born in 1960. Claxton received the job because he was the most senior applicant at the Buchanan location, and Indiana Michigan Power Company's contract with the union dictated that applicants from the location that had the opening were to be preferred over applicants from other locations.

On April 24, 2008, Harper took a co-worker to a restaurant for coffee and a meal while on a service call. He recorded this break as compensable overtime. Bruce Langle, Harper's supervisor, met with Harper to discuss the impropriety of the conduct and coach him with regards to acceptable time recording practices. Harper was not disciplined for this incident.

On May 8, 2008, Harper and Jason Scoles, another Indiana Michigan Power employee, were sent out to restore power to a customer. Harper was the senior lineman on the job. After restoring power, both of them noticed sparks coming from the jumper on the bundle conductor. Harper decided to leave instead of dealing with the sparks because it was late and he was fatigued. He did not report the condition to Indiana Michigan Power. The same customer experienced a power outage forty-five minutes later and Indiana Michigan Power had to call another employee in on overtime to fix it. Harper received a Written Warning for "Unacceptable Job Performance — failure to correct known problem and leaving hazardous condition" on May 9, 2008. Scoles did not receive a warning.

On May 19, 2008, Harper had a doctor's appointment. On his time sheet for this day, Harper recorded two hours of overtime for the time he was at the doctor's office, charging the time to "meeting" and "travel to meeting." Joe Jakubowicz, a supervisor, asked Harper if he docked himself for the time that he took off from for the doctor's appointment. Harper said he had not and that he felt that Indiana Michigan Power Company should pay him for the time he

4

spent at the appointment because he attended it through a company program. He also said that the appointment related to stress he felt from previous discussions he had with Langle about his job performance and attendance and time keeping issues. Jakubowicz told Harper that Indiana Michigan Power Company considered his conduct to be falsifying records and that he should correct the error. Harper went to the timekeeper on May 23, 2008, and removed one hour of pay for May 19. Harper was not disciplined for this incident.

On May 30, 2008, at around 2:30 p.m., Line Crew Supervisor Ted Phillips was looking for the keys to one of Indiana Michigan Power Company's vans because another employee needed to use it. After looking for Harper through the building, Phillips and Langle discovered that his personal vehicle was no longer in the parking lot. At around 3:00 p.m., Line Crew Supervisor Terry Riggenbach called Harper and asked about the keys. Harper returned with the keys around 3:35 p.m. and gave the keys to Langle. Langle asked Harper where he had been, and Harper said that he had some things to do and decided to leave work early. When Langle asked if Harper had received permission from a supervisor to leave early, Harper said no. Langle told Harper that he did not have to authority to come and go as he pleased and that doing so was unacceptable conduct. Although Harper told Langle that he had stopped his working time at 2:40 p.m., when Langle checked with the timekeeper, he discovered that Harper had reported that he had worked the whole day and received pay for doing a full day's work. After Indiana Michigan Power investigated the incident, Harper received a three-day suspension from June 9 to June 11, 2008.

On June 26, 2008, Harper attended a routine safety meeting. At the meeting, Harper made statements about feeling stressed out and not knowing if he was doing his job right

5

anymore. Because of these statements, Langle took Harper off high voltage and hazardous duties and placed him on light duty work. Langle told Harper that he would not return to high voltage and hazardous duty until he underwent a psychological examination and received clearance. Harper was scheduled to begin light duty work on June 30, 2008.

On June 30, 2008, Harper called in sick and said that he would return to work on July 4, 2008. He delayed his return to July 7, 2008 because of continuing medical problems related to a diagnosis of gout. Harper returned to work on July 7, but he left after less than an hour because he claimed his doctor called him and told him to come see him immediately. Harper's doctor told him that his EKG has shown that he had a light heart attack. Harper told Indiana Michigan Power Company that he would be off work for several weeks and that his doctor did not want him to do work that involved heavy lifting and heights for at least two weeks after he returned to work. Indiana Michigan Power Company told Harper that it would require him to undergo a functional capacity evaluation in addition to the psychological examination previously requested before he would be allowed to return to work. On July 9, 2008, Kirt Scherer, a Senior HR Consultant with Indiana Michigan Power Company, contacted Harper to check on his condition. Scherer told Harper that he would receive sick pay, which amounts to 100% of his regular pay, while he remained off work because of his gout and heart conditions. Scherer told Harper to concentrate on getting well and asked him to provide Indiana Michigan Power Company with monthly updates on his condition and anticipated return to work date.

On July 15, 2008, Harper filed a Charge of Discrimination with the EEOC. He complained about being overlooked for promotions, being harassed about his age because he claimed he was constantly asked when he was going to retire, being disciplined in retaliation,

and being subject to a hostile work environment. He also complained that Indiana Michigan Power Company did not hire minorities or women and that disciplinary actions are unfairly applied to minorities. He claimed he was being discriminated against because of his race and his age.

On July 28, 2008, Harper contacted Christine Craig in Indiana Medical Power Company's medical department and told her that his new return to work date would be August 5, 2008. Craig scheduled Harper's functional capacity exam for August 20, 2008, and his psychological examination for August 26, 2008. Harper underwent the functional capacity exam on August 20, but he did not pass it. As a result, Harper remained on sick leave, receiving full pay. Indiana Michigan Power Company told Harper that it would re-evaluate him once he increased his strength and requested a re-evaluation. Harper missed his August 26, 2008, psychological examination, but he underwent one on September 11, 2008, instead. He passed the psychological examination.

On October 16, 2008, Harper called Craig and asked for a new functional capacity exam because he had been working out and felt he could pass it now. Harper's second functional capacity exam was scheduled for October 29, 2008.

On October 17, 2008, Harped filed another Charge of Discrimination with the EEOC. Harper complained that he was required to undergo tests before he returned to regular duties, and that one of the tests had nothing to do with the reason for his medical leave. Harper stated that Indiana Michigan Power Company sent him forms to fill out for long-term disability even though he is not disabled. He said that Human Resources was looking into placing him in another job, and asked him if he would consider retiring. He stated that he believed that Indiana

Michigan Power Company was retaliating against him for filing prior charges of discrimination, for speaking out against unsafe work practices, and because of a perceived disability. He claimed that his employer's unwillingness to reinstate him caused him to lose out on overtime and safety incentive bonuses, and that as a result he was financially stressed. He stated that he believed he was being discriminated and retaliated against because of a perceived disability and his age.

On October 24, 2008, while he was still on sick leave, Harper tore his right quadriceps muscle. He underwent surgery to repair the injury on October 29, 2008. Harper obtained a release from his doctor to return to work on March 3, 2009, and he then underwent and passed a functional capacity exam. He returned to work in March 2009.

On November 25, 2008, Harper received a Notice of Right to Sue for his first Charge of Discrimination. On January 15, 2009, he received a Dismissal and Notice of Rights for his second Charge of Discrimination. On April 20, 2009, Harper filed this lawsuit, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. 1981, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 622, 623(a), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a). In his complaint, Harper alleged that Indiana Michigan Power Company discriminated against him by subjecting him to a hostile work environment; denying him a promotion; singling him out with respect to consideration for retirement; disciplining him; suspending him from employment; placing him on light duty; subjecting him to a loss of overtime pay; taking him off work; and not allowing him to return to work.

**C. Discussion**

**(1)** *Discrimination on the basis of race and age*

In an employment discrimination case, a plaintiff can defeat summary judgment by either the direct or indirect method of proof. *Egonmwan v. Cook County Sherif's Dept.*, 602 F.3d 845, 849–50 (7th Cir. 2010) (dealing with § 1981 claim and stating that the same requirements apply to Title VII claims); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008) (dealing with an ADEA claim). To prove discrimination under the direct method, "a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." *Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559, 563 (7th Cir. 2009).

Harper cannot succeed under the direct method of proof because he has provided no evidence that any of the disciplinary actions taken against him were motivated by race or age bias. He has shown nothing to rebut the reasons that Indiana Michigan Power Company has given for its actions.

A plaintiff can also use the indirect method and build a prima facie case of discrimination by showing that: "(1) [Plaintiff] is a member of a protected class; (2) his job performance met [Defendant's] legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual outside his protected class was treated more favorably." *Egonmwan,* 602 F.3d at 850. After the plaintiff meets the initial burden of establishing discrimination on the basis of gender and race, it becomes the defendant's burden to counter the claims with evidence that there were "legitimate and nondiscriminatory reasons for their actions." *Id*. The plaintiff would then have to demonstrated that the defendant's reasons were pretextual. *Id.*

9

Harper cannot succeed under the indirect method of proof because he has not shown that his job performance met Indiana Michigan Power Company's legitimate expectations. Furthermore, he has provided no evidence that other similarly situated individuals outside his protected class were treated more favorably. While Harper has alleged that disciplinary actions were disproportionately taken against minorities, he has provided no specific examples. This is not enough to survive a summary judgment motion.

**2.** *Hostile Work Environment Claim*

In order to succeed on a hostile work environment claim, the plaintiff must show that the environment would be found hostile by a reasonable person and that the plaintiff in fact found it to be hostile. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). When determining the hostility of an environment, a court will look at the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance." *Id.* (quoting quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998)). The Seventh Circuit has never decided if plaintiffs may bring hostile environment claims under the ADEA. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).

Harper claims he suffered from a hostile work environment because his work was unfairly scrutinized and because he was constantly asked if he was going to retire. Harper has provided no evidence backing up these claims, so he cannot show that he was suffering from a hostile work environment.

### 3. *Retaliation Claim*

Plaintiff can avoid summary judgment on a retaliation claim by using either a direct or indirect method of proof. *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858–59 (7th Cir. 2008). Using the direct method to establish a claim, Plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id.* at 858. Plaintiff can use both direct and circumstantial evidence in meeting this burden. *Id.*

While Harper may have engaged in a statutorily protected activity and the Indiana Michigan Power Company took adverse action against him, he can show no causal link between his protected activity and the adverse action. While he did file an EEOC charge in April 2005 and met with the President in 2006 to voice his concerns over minority hiring, he has not shown that any of his supervisors were aware of these actions. Additionally, no adverse action was taken against him after he filed the EEOC charge on July 15, 2008. The only action taken by Indiana Michigan Power Company after it was filed was requiring him to show he was able to perform his job after he returned from sick leave. He still received full pay while on sick leave.

### 4. *ADA claim*

The Americans with Disabilities Act provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006) (prior to 2008 amendments). A person can be considered to have a disability if they are "regarded as having such impairment." 42 U.S.C. § 12101(2)(C) (2006) (prior to 2008

11

amendments). An employer can defend against a charge of discrimination if qualifications for a job are job-related and consistent with business necessity, and a qualification standard my include a requirement that an individual not pose a safety threat to others in the workplace. 42 U.S.C. 12113(a),(b) (2006) (prior to 2008 amendments).

Harper claimed he was discriminated against because of a perceived disability because he was not allowed to go back to work before he completed a functional capacity examination. Even assuming Harper had a perceived disability, he cannot succeed on this because the functional capacity examination was required to make sure he could safely perform his job. Harper has provided no evidence that the functional capacity examination was not needed to demonstrate his ability to do the job.

**D. Conclusion**

Defendants Motion for Summary Judgment [DE 35] is GRANTED.

SO ORDERED on December 22, 2010.

    s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge